**UNITED STATES of America et al., Plaintiffs-Appellees,**

v.

**Charles H. BROWN, Defendant-Appellant.**

No. 75–2175.

United States Court of Appeals, Sixth Circuit.

Argued April 2, 1976.

Decided June 2, 1976.

118

Stanley R. Kirk, Patmon, Young & Kirk, Detroit, Mich., for defendant-appellant.

Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., Scott P. Crampton, Gilbert Andrews, Appellate Section, Tax Div., Dept. of Jus-

tice, Robert E. Lindsay, Daniel F. Ross, Robert A. Bernstein, Washington, D. C., for plaintiffs-appellees.

Before WEICK, McCREE, and MILLER,* Circuit Judges.

McCREE, Circuit Judge.

This appeal requires us to decide whether section 7602 of the Internal Revenue Code of 1954, which provides for the examination and production of "books, papers, records, or other data," authorizes the Internal Revenue Service to compel a taxpayer, who has otherwise complied with the requirements of a routine audit, to appear before an IRS special agent in order to write, in his presence and at his direction, taxpayer's former wife's signature twenty-five times. We hold that § 7602 does not authorize this production of handwriting exemplars not yet in existence.

Brown was summoned to appear before an IRS special agent to give personal handwriting exemplars and testimony relating to the preparation of his 1972 income tax return, pursuant to Int.Rev.Code of 1954, § 7602 (26 U.S.C. § 7602), which provides:

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

The facts as found by the district court are not disputed. The IRS had been conducting an investigation to determine Brown's correct income tax liability for the year 1972. After the audit, the IRS received information that what appeared to be the signature of appellant's former wife, Sharon Brown, on the joint return filed by appellant and his wife for 1972, was a forgery. Thereupon, James Budde, a special agent assigned to the Intelligence Division of the IRS, launched an investigation.

On September 27, 1974, Budde obtained and served an administrative summons, directing Sharon Brown to appear and testify about the circumstances surrounding the filing of the 1972 return. Appellant then filed suit in district court against Sharon Brown and the IRS, and he obtained an injunction prohibiting his former wife from testifying in a manner that would violate the confidential marital privilege.

On January 13, 1975, Budde served an administrative summons upon appellant, directing him to give handwriting exemplars of Sharon's signature and testimony relating to the 1972 joint tax return.[1] On Janu-

---

* The Honorable William E. Miller died on April 12, 1976 and did not participate in this opinion.

1. The summons was addressed to Charles H. Brown and reads in relevant part:
   You are hereby summoned and required to appear before James Budde an officer of the Internal Revenue Service, to give testimony relating to the tax liability or the collection of the tax liability of the above named person for the period(s) designated [Charles H. Brown, 1972] at the place and time hereinafter set forth: To give personal handwriting exemplars and testimony relating to the preparation and execution of your 1972 tax return and the Power of Attorney issued to GEORGE JOHNSON & COMPANY on June 21, 1974.

ary 20, 1975, Brown appeared in answer to the summons, but refused to produce the signatures as required by its terms. This enforcement action was then begun on June 30, 1975 by the IRS pursuant to 26 U.S.C. § 7604.[2] Enforcement was granted on July 31, 1975,[3] and this appeal followed.

■ As the district court recited, appellant has not challenged the underlying relevancy or materiality of the exemplars sought by the summons.[4] Brown's challenge to its enforcement is premised solely on the ground that § 7602 does not authorize the production of handwriting exemplars not in existence.

■ In pertinent part, § 7602 sanctions use of a summons "(2) . . . to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material" to a

Place and time for appearance: Room 477 Federal Building, Detroit, Michigan on the 13th day of January, 1975 at 9:00 A.M. * * * Under authority of the Internal Revenue Code, . . . .
/s/ James A. Budde

2.  Int.Rev.Code of 1954, § 7604 (26 U.S.C. § 7604) provides:
    *(a) Jurisdiction of district court.*—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.
    *(b) Enforcement.*—Whenever any person summoned under section 6420(e)(2), 6421(f)(2), 6424(d)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary or his delegate may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not

legitimate tax investigation. Since there is no question that Brown's testimony may be compelled pursuant to § 7602(2), the only question is whether handwriting exemplars not in existence constitute "other data" within the meaning of the statute.

It is the government's contention that when Congress used the general phrase "other data," it intended to empower the IRS to summon any "constitutionally permissible information," including handwriting exemplars, to carry out its investigation. The government argues that the summons power of the IRS should be construed liberally because of its investigatory purpose. *United States v. Widelski*, 452 F.2d 1, 4 (6th Cir. 1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972).

The district judge followed *United States v. Campbell*, 390 F.Supp. 711 (D.S.D.1975),

inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

3.  The district court ordered:
    . . . that the respondent, CHARLES H. BROWN, shall appear before Special Agent James Budde at Room 477, Federal Building, Detroit, Michigan, on September 18, 1975, at 10:00 a. m., and furnish for examination at least twenty-five copies of handwriting exemplars of the signature "Sharon C. Brown" prepared by the respondent, CHARLES H. BROWN, in the presence of the petitioner, JAMES BUDDE, on such forms as the petitioner, JAMES BUDDE, may require, and shall also appear before Special Agent James Budde for the purpose of giving testimony concerning the tax liabilities of the respondent, CHARLES H. BROWN, as to the year 1972.

4.  The Commissioner appears to be seeking something more than "ascertaining the correctness" of appellant's tax return or "determining the liability of [appellant] for any internal revenue tax," pursuant to § 7602. If the Commissioner merely wanted to authenticate Sharon's signature to determine whether the tax return in question was a joint one, he could have summoned her to testify whether she signed the return and to produce existing documents on which her signature appeared. These procedures would not appear to violate the marital privilege, since no confidential communications or disclosures between the spouses would be involved.

since affirmed in 524 F.2d 604 (8th Cir. 1975), and interpreted § 7602(2) as authorizing the IRS to require a taxpayer to create handwriting exemplars. We decline to follow the construction given to the statute by the Eighth Circuit, and we reverse the district court.

The government's interpretation of § 7602 does not follow from a consideration of the statute as a whole. In subsection (1), (§ 7602 is set out in full *supra* ), the Secretary or his delegate is authorized "[t]o *examine* any books, papers, records, or other data which may be relevant or material" to the investigation in question. (Emphasis added.) In subsection (2) the Secretary or his delegate is authorized to summon any person deemed to have relevant information to appear before the Secretary "to *produce such* books, papers, records, or other data." (Emphasis added.) The first subsection authorizes the Secretary to examine specified documents, but does not authorize him to order the making of any items not in existence. If the Congress had intended to give the Secretary the authority to direct the manufacture of new documents, it would have used appropriate language. Since it is "fundamental that a section of a statute should not be read in isolation from the context of the whole [statute]," *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492, 499 (1962), the "books, papers, records, or other data" to be *produced* in subsection (2) are those which may be *examined* in subsection (1). We therefore conclude that the Congress did not authorize the Secretary to require the manufacture of documents or other data for his examination.

The government's interpretation of "books, papers, records, or other data" is contrary to the well established doctrine of statutory construction, *ejusdem generis*. See 2A Sutherland, *Statutes and Statutory Construction* §§ 44.16–44.18 (4th ed. 1973). Literally, *ejusdem generis* means of the same kind, class, or nature. *Black's Law Dictionary* 608 (rev. ed. 1968). In the application of *ejusdem generis*, unless a statute otherwise indicates, where a listing of particular or specific objects is followed by general words to indicate that the list is incomplete, the general words will not be construed broadly, but will be limited to include only objects of the same kind or class specifically enumerated.

In *Weyerhaeuser Steamship Co. v. United States*, 372 U.S. 597, 600–601, 83 S.Ct. 926, 928, 10 L.Ed.2d 1, 4 (1963), the Supreme Court stated that "the traditional rule of statutory construction . . . counsels against giving to general words a meaning totally unrelated to the more specific terms of a statute." In *Weyerhaeuser*, the Court was concerned with the interpretation of then section 7(b) of the Federal Employees' Compensation Act, which provided in relevant part that the government's liability for

> injury or death of an employee shall be exclusive, and in place, of all other liability of the United States or such instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and anyone otherwise entitled to recover damages from the United States . . . . 5 U.S.C. § 757(b).[5]

The issue was whether the petitioner, a ship owner, was to be included in the general phrase, "anyone otherwise entitled to recover damages." The government, seeking to limit its liability, argued that the petitioner was included in the broad class of "anyone otherwise entitled . . . ." Nevertheless, the Court held that this general language had to be construed in the context of the explicit enumeration of "employees, their representatives, their dependents, and next of kin," and that the petitioner did not fall within this general class.

Section 7602 does not provide a definition of the phrase "other data." In its brief, the government interprets "other data" to include any "constitutionally permissible information." However, it is a

---

5. This statute was repealed in 1966. Nearly identical language is now embodied in 5 U.S.C. § 8173, enacted in 1966.

"familiar canon of statutory construction that such [catchall terminating] clauses are to be read as bringing within the statute categories similar in type to those specifically enumerated." *Federal Maritime Commission v. Seatrain Lines,*, 411 U.S. 726, 734, 93 S.Ct. 1773, 1779, 36 L.Ed.2d 620, 627 (1973).

If Congress had intended the words "other data" to be interpreted in an unrestricted sense, it could easily have said so by adding words such as "of whatever kind whether in existence or not." We hold that the word "other" following this enumeration of particular items ought to be read as "other of a like kind." The statutory language conferring the power to "examine any books, papers, records, or other data which may be relevant or material" to a tax investigation, without a strained construction, refers to existing writings. On the other hand, the handwriting exemplars that appellant has been ordered to furnish are writings that do not exist and will come into being only if appellant manufactures them in obedience to the IRS summons.

The legislative history of § 7602 is inconclusive at best. However, as appellant correctly notes, the summons provisions of the predecessor statutes to § 7602 granted the power of summons only with respect to "books, papers, records, or memoranda." *See* Int.Rev.Code of 1939, § 3614; Int. Rev.Act of 1934, § 507; Int.Rev.Act of 1928, § 618; Int.Rev.Act of 1926, § 1104. The legislative history of Int.Rev.Code of 1954, § 7602, in which "memoranda" was replaced by "other data," specifically indicates that no significant change was meant to take place. Both the House and Senate Committee Reports state: "[This section] contains no material change from existing law." 1954 U.S.Code Cong. & Admin.News, pp. 4017, 4584; 1954 U.S.Code Cong. & Admin. News, pp. 4621, 5268.

Although the legislative history concerning the section we are reviewing is not conclusive, the companion section of a predecessor statute to § 7602(2) sheds some light on Congress' intent in using the phrase "other data." S.Rep. No. 558, 73rd Cong., 2d Sess., § 507 states that the substitution of the phrase "other data" for "memoranda" was intended to authorize the IRS to examine previously unavailable documents belonging to the transferors of property of a liquidated corporation to determine possible tax liability of the transferees. *See* Int.Rev.Act of 1934, § 507. Thus, although the scope of inquiry of the IRS may have been broadened with reference to the kinds of books, papers, and records to be examined, the expansion was for a very specific purpose, and the items in question did not have to be created for the examination.

In the *Campbell* case, the Eighth Circuit compared "other data" with "memoranda" and observed that the latter "contemplates matters already in existence." 524 F.2d at 606. But, that court did not see fit to give the same interpretation to "other data," regardless of the expressed legislative intent not to change the existing law. Since the Congress did not intend § 7602 to affect a material change from existing law, we conclude that "other data" should be construed to contemplate only papers, writings, or records already in existence. Our conclusion is consistent with the general rule established in *Gould v. Gould*, 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211, 213 (1917), where the Supreme Court interpreted a substantive taxing statute, stating: "In case of doubt they [tax statutes] are construed most strongly against the government, and in favor to the citizen."

■ Finally, the government seeks affirmance of the district court's order on the ground that the summons power of the IRS and the subpoena power of the grand jury are analogous. *See United States v. Bisceglia*, 420 U.S. 141, 147–48, 95 S.Ct. 915, 919–920, 43 L.Ed.2d 88, 94 (1975); *United States v. Widelski*, 452 F.2d 1, 4 (6th Cir. 1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972). Although an analogy may exist between the investigative functions of a grand jury and the investigative powers of the Commissioner of Internal Revenue, when an IRS summons is challenged, *Bisceglia* teaches that we must

inquire whether the summons is authorized by the Internal Revenue Code. 420 U.S. at 148, 95 S.Ct. at 920, 43 L.Ed.2d at 94. And we have determined that the Congress has not given the Commissioner the authority to issue a summons to require a person to sign the name of another person for the purpose of comparison. As one commentator has written, although the Commissioner has the authority to summon existing documents relevant to a tax investigation, "The Commissioner has no power of subpoena in his own right." 8A Mertens, *Federal Income Taxation* § 47.51 (rev. ed. 1971).

We do not decide whether the Congress may, by appropriate legislation, authorize the Commissioner to require a person to prepare for examination handwriting exemplars. Nor do we decide whether the Commissioner may require a person to produce for examination existing signatures— either his own or those of another person— in his possession or under his control.

Accordingly, the order of the district court is reversed insofar as it authorizes the IRS to compel the production of handwriting exemplars not already in existence at the time of the issuance of the summons. The order is affirmed in all other respects.