UNITED STATES of America and Walter Ross, Revenue Agent, Internal Revenue Service, Petitioners-Appellants, Cross-Appellees,

v.

Geoffrey DAVEY, as Secretary of the Continental Corporation, Respondent-Appellee, Cross-Appellant.

Nos. 1089, 1298, Dockets 76–6040, 76–6042.

United States Court of Appeals, Second Circuit.

Argued June 17, 1976.

Decided Sept. 27, 1976.

Paul H. Silverman, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., for the S. D. N. Y., William G. Ballaine, Asst. U. S. Atty., New York City, of counsel), for petitioners-appellants, cross-appellees.

Walter J. Rockler, Washington, D. C. (Robert J. Jones, Arnold & Porter, Washington, D. C., Edward T. Donovan, Grubbs, Leahy & Donovan, New York City, of counsel), for respondent-appellee, cross-appellant.

Before MANSFIELD, MULLIGAN and GURFEIN, Circuit Judges.

MANSFIELD, Circuit Judge:

Upon this appeal and cross-appeal growing out of the efforts of the Internal Revenue Service ("IRS") to require a taxpayer, The Continental Corporation ("Continental"), to produce certain data in connection with the auditing of its tax returns, the central issue is whether the IRS may by summons issued pursuant to § 7602 of the Internal Revenue Code, 26 U.S.C. § 7602,[1] compel the taxpayer to produce a computer tape comprising part of its financial record-keeping system, as distinguished from print-outs or duplicates of the tape. We hold that the IRS is entitled to the original tapes, with no strings attached or conditions imposed, and that the order of the Southern District of New York should be modified accordingly.

Continental is a billion dollar insurance holding company subject to the "large case" audit program of the IRS. Its records of expenses and losses are transferred from original vouchers, invoices, and other source documents onto punched computer cards, which are then used to produce the magnetic tapes in question. From these tapes, the taxpayer creates print-outs in a form that provides support for records required by state insurance department regulations. The taxpayer saves the tapes pursuant to Revenue Ruling 71–20, 1971–1 Cum.Bull. 392,[2] promulgated in order to facilitate IRS audits of companies with computer-based record-keeping systems.

In connection with its audit of taxpayer's consolidated tax returns for calendar years 1971 and 1972, the IRS requested 37 reels of these tapes. The taxpayer refused to produce them. Thereupon the IRS served a summons on Geoffrey Davey, Continental's Secretary, directing him to produce the tapes.[3] When Davey refused to comply on

---

1. "[T]he Secretary or his delegate is authorized . . . (2) To summon the person liable for tax . . . or any officer or employee of such person . . . to produce such books, papers, records, or other data . . as may be relevant or material to such inquiry . . . ."
 26 U.S.C. § 7602(2).

2. Section 6001 of the Internal Revenue Code of 1954, 26 U.S.C. § 6001, provides in part:
 "Every person liable for any tax imposed by this title . . . shall keep such records . . . as the Secretary or his delegate may from time to time prescribe."
 Revenue Ruling 71–20, 1971–1 Cum.Bull. 392, interprets § 6001 and the regulations thereunder as follows:
 "It is held that punched cards, magnetic tapes, disks, and other machine-sensible data media used for recording, consolidating, and summarizing accounting transactions and records within a taxpayer's automatic data processing system are records within the meaning of section 6001 of the Code . . . and are required to be retained so long as the contents may become material in the administration of any internal revenue law."

3. The summons required Davey to appear on January 28, 1975, and to bring with him:
 "All Machine-Sensible Data Media used for recording, consolidating or summarizing accounting or financial transactions and records in respect of general expenses and losses expended or incurred during the years 1971 and 1972, including but not limited to Magnetic Tape number 110101 and Magnetic Tape number 421001, for each year respectively."

the ground that the summons imposed an unnecessary burden on the taxpayer and offered instead to furnish print-out sheets made from the tape, the IRS brought this action against him in the Southern District of New York, 404 F.Supp. 1283, for enforcement of its summons. Judge Henry F. Werker ordered enforcement but, because of the possibility that the tapes might be erased, destroyed, or lost while in the possession of the IRS, placed two conditions on his order: (1) that the examination be limited to duplicates of the requested tapes, and (2) that the IRS bear the cost of duplication.

The IRS here appeals the conditions imposed on enforcement of its summons and the taxpayer cross-appeals the enforcement itself. We hold that the IRS was entitled to unconditional enforcement of its original summons.

## DISCUSSION

The threshold question is whether, with or without conditions, the IRS had a statutory authority to compel production of the tapes. The taxpayer argues first that § 7602 of the Internal Revenue Code does not authorize a summons for the production of such tapes. It contends that the language of that section, which allows the Service to compel production of "such books, papers, records, or other data . . as may be relevant or material to such inquiry," is limited to visible and legible records. We disagree.

Section 7602 is intended to allow the IRS access to all relevant or material records and data in the taxpayer's possession. It places no limit or condition on the type or form of the medium by which the record subject to summons is kept and nothing in the language or background of the section suggests that such a limitation was intended. The purpose was to enable the IRS to get at the taxpayer's records, in whatever form they might be kept. The standard is not the form of the record but whether it might shed light on the accuracy of the taxpayer's returns. See *Foster v. United States*, 265 F.2d 183, 186–87 (2d Cir.), *cert.*

*denied*, 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261 (1959). In this era of developing information-storage technology there is no conceivable reason to adopt a construction that would immunize companies with computer-based record-keeping systems from IRS scrutiny. Such would not be in keeping with Congress' intention in enacting the section.

Continental's reliance upon *United States v. Russo*, 480 F.2d 1228 (6th Cir. 1973), *cert. denied*, 414 U.S. 1157, 94 S.Ct. 915, 39 L.Ed.2d 109 (1974), and *United States v. DeGeorgia*, 420 F.2d 889 (9th Cir. 1969), is misplaced. Those cases hold merely that computer print-outs qualify as records under the Federal Business Records Act, 28 U.S.C. § 1732(a), which creates a business records exception to the hearsay rule. They are therefore irrelevant. Similarly, the fact that Rule 34 of the Federal Rules of Civil Procedure was amended in 1970 to list "data compilations," a term that has been interpreted to include tapes, see *Adams v. Dan River Mills, Inc.*, 54 F.R.D. 220, 222 (W.D.Va.1972), among discoverable "documents," offers no support for taxpayer's contention. The Advisory Committee Note to that amendment indicates that the amendment was merely intended to clarify the scope of the rule, not to change it. We have found no authority prior to the amendment holding that computer tapes were not discoverable under the rule.

■ We therefore hold that the language of § 7602 is sufficiently broad to encompass records or data stored in the form of computer tapes.

■ The taxpayer next argues that the tapes requested here are not "relevant or material" to the IRS audit of its tax returns. The 37 reels of tape in question contain general expense information for 1972 and loss payment and expense information for 1971 and 1972. The subject matter of the tapes would therefore appear to be central to any audit of taxpayer's returns for 1971 and 1972 and certainly "relevant" and "material." The taxpayer nevertheless contends that it does not have

a computerized accounting system, that the computer tapes merely constitute "intermediate processing tools" used to assist it in the preparation of its financial records, that the IRS is requesting the tapes for convenience in processing, not for their informational content, which has been made available to the IRS in the form of print-out sheets, and that § 7602 cannot be used to compel a taxpayer to make the Service's auditing tasks easier, such as by preparing or creating documents not in existence or summarizing information already made available. We agree that § 7602 does not require preparation or production of records not yet in existence, see United States v. Brown, 536 F.2d 117 (6th Cir. 1976). However, the tapes requested here were prepared by the taxpayer in the regular course of business and were in existence when requested by the IRS. We also recognize that if the subject matter of requested records is not otherwise relevant, convenience will not make it so. In United States v. Matras, 487 F.2d 1271 (8th Cir. 1973), cited and relied upon by Continental, the court properly held that, where the Service already had the taxpayer's actual budgets for the years in question, projected record of actual transactions was irrelevant. The test of materiality and relevance, as the Matras court acknowledged, is whether the inspection sought might throw light on the correctness of the taxpayer's returns. United States v. Shlom, 420 F.2d 263, 265 (2d Cir. 1969), cert. denied, 397 U.S. 1074, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970); United States v. Harrington, 388 F.2d 520, 523–24 (2d Cir. 1968). Here, inspection of the requested tapes could reasonably be expected to do so, and would incidentally insure greater accuracy and a substantial saving in auditing time by enabling the IRS, through use of the taxpayer's own record medium, to trace transactions from the original documents to the tax return.

▇▇▇ The taxpayer also argues that the IRS has already been granted access to the information contained on the tapes since Continental has offered the IRS print-outs in lieu of the tapes. The taxpayer suggests that the summons therefore violates § 7605(b), which prohibits an unnecessary examination or investigation. See United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Powell is inapplicable here, however, since, although the taxpayer tendered the print-outs in lieu of the requested tapes, the Service did not accept them. In any event, the standard is whether the examination or investigation sought by the IRS is unnecessarily duplicative of some prior examination. It is not the purpose of § 7605(b) to allow a taxpayer to give the IRS requested information in an inconvenient form with a view to immunizing itself from demands for other records containing the same relevant information in a more convenient form. Furthermore, the Service should not be required to rely on the taxpayer's affidavit that a print-out accurately reproduces all information on requested tapes. Such a holding would run contrary to the investigatorial purpose of the audit.

▇▇▇ Turning next to the taxpayer's argument that the request subjects it to excessive and unreasonable burdens, we recognize that a district court may refuse to enforce a summons which is excessively burdensome, United States v. Harrington, 388 F.2d 520, 523 (2d Cir. 1968); United States v. Dauphin Trust Co., 385 F.2d 129 (3d Cir. 1967), cert. denied, 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 981 (1968), or impose conditions as to cost, place of examination, or other factors, which are designed to minimize the burden, United States v. Friedman, 532 F.2d 928 (3d Cir. 1976) (non-taxpayer custodian); United States v. Davey, 426 F.2d 842, 845 (2d Cir. 1970) (non-taxpayer custodian). Once the IRS has made a minimal showing of relevancy, however, the burden shifts to the taxpayer to show why the summons might represent "an abuse of the court's process" which should not be enforced. United States v. Powell, 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). The present taxpayer has not met that burden.

▇▇▇ The taxpayer's suggestion that temporary removal of the original tapes by

the IRS would unduly burden or unnecessarily interrupt the company's business is unsupported. On the contrary, Continental has had no real use for the tapes except as "intermediate process tools" for 30 days and it has retained them only to satisfy Revenue Ruling 71–20, which requires retention for auditing inspection by the Service. In effect the taxpayer argues that it may withhold the tapes from the very agency for which they are being retained because of the risk that that agency may lose or destroy them. Such circular reasoning is unpersuasive.

 Section 7602 does not speak on terms of duplicates, but of the records themselves—and for a good reason. Where the accuracy of a taxpayer's return is being checked, the government is entitled to use the original records for purposes of verification rather than be forced to accept purported copies, which present the risk of error or tampering. The IRS should not be put in the position of having to prove such error or tampering before it may use the originals. Although there is always, as Judge Werker noted, the "possibility" of editing, erasure or destruction of the tapes after they are turned over to the IRS, the taxpayer here failed to adduce any substantial evidence as to the nature, extent and seriousness of any such risk and the district court made no findings on the subject. The government, on the other hand, offered evidence indicating that the tapes would remain safe and unaltered in its custody. Accordingly, we hold that on this record the district court abused its discretion in ruling that the summons could be satisfied by the taxpayer's turning over the duplicates rather than the original tapes. If the taxpayer wishes to protect itself against the risk that the tapes might be destroyed in whole or in part while in the government's possession, it may do so by making duplicates before complying with the summons.

 There remains the question of whether the district court could properly condition the production of the tapes upon the Service's payment of the costs of duplication. Since the duplication is desired by the taxpayer solely to protect it against the risk of loss or damage while the tapes are in the government's custody and not because it will have need for the tapes during that period, we doubt whether the cost of such added protection represents the type of burden that might be imposed upon the government. Assuming that a taxpayer, having a stake in the outcome, would be held to no less a burden than that imposed upon a non-taxpayer custodian as a reasonable cost of doing business, see *United States v. Davey, supra; United States v. Friedman, supra; United States v. Continental Bank & Trust Co.*, 503 F.2d 45 (10th Cir. 1974) (non-taxpayer custodian), we are satisfied that on this record a finding that the cost was not one reasonably incident to the conduct of the taxpayer's business would be clearly erroneous. For this billion dollar company, which produces and stores some 200 tapes each year, the cost of duplicating the 37 tapes in question, estimated at approximately $1,305, would be minimal, representing but a small outlay in comparison with the other amounts which the taxpayer expends annually in cooperating with the IRS. We therefore conclude that the cost of duplicating the 37 tapes requested by the IRS, should the taxpayer desire duplicates, constitutes a reasonable cost of doing business which should be borne by the taxpayer.

The case is remanded for modification of the district court order in accordance with this opinion.