**NATIONAL UNION ELECTRIC CORPORATION**

v.

**MATSUSHITA ELECTRIC INDUSTRI-AL CO., LTD. et al.**

**In re JAPANESE ELECTRONIC PRODUCTS ANTITRUST LITIGATION.**

Civ. A. No. 74–3247.
MDL No. 189.

United States District Court,
E. D. Pennsylvania.

May 5, 1980.

Edwin P. Rome, John Hardin Young (argued), Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for plaintiff, National Union Electric Corp.

Carl W. Schwarz, William H. Barrett, Metzger, Shadyac & Schwarz, Washington, D. C., for moving defendants.

Donald J. Zoeller, John P. Hederman, Thomas P. Lynch, Mudge, Rose, Guthrie &

Alexander, New York City, for the Toshiba defendants.

## MEMORANDUM OPINION AND ORDER

### (*Discovery Request For Computer Material*)

EDWARD R. BECKER, District Judge.

This Memorandum Opinion addresses a motion styled "Request of Certain Defendants for the Production by National Union Electric Corporation (NUE) of Certain Computer Materials."[1] More specifically, defendants request NUE to cause its computer experts to perform the work necessary to create a computer readable tape containing certain data previously supplied by NUE to defendants in printed form in answers to interrogatories.

The relevant interrogatories requested:

—NUE's annual and monthly sales, in dollars and units, for monochrome and color television receivers, by model (Interrogatories 1 and 2)

—NUE's annual and monthly production, in dollars and units, for monochrome and color television receivers, by model (Interrogatories 3 and 4)

—Model numbers for television receivers produced or sold by NUE, including various characteristics of the sets (e. g. the number of square inches on the viewing screen of the picture tube) (Interrogatory No. 5).

In answer to the interrogatories, NUE furnished certain TV sales and production data, and certain model by model price data in the form of a computer generated paper printout. The printout can, of course, be read by defense counsel. However, it cannot be read by defense counsel's computer. Because defense counsel contend that they cannot effectively analyze the data until the data can be read by their computer, they have brought the present motion.[2]

Defendants' counsel concede that they could themselves replicate what they seek from NUE if they were to undertake the expensive and time consuming process of having clerical personnel manually create a data base identical to NUE's by reading each piece of data in NUE's computer paper printout and key-punching it into a computer readable device.[3] They estimate that this process would take two months and cost many thousands of dollars. On the other hand, defendants submit that it would be a comparatively simple matter for NUE's computer people to rerun the program which caused the computer to assemble and to print this data in paper reports, substituting a new instruction to extract and print the same data onto a computer-readable form like magnetic tape. Defend-

---

1. The motion arises in the course of a massive antitrust case in which NUE is one of the plaintiffs. The anatomy of the litigation is detailed elsewhere, and need not be repeated here. *See* Opinion 494 F.Supp. 1190 at 1193–1194 (April 14, 1980). Both motion and response (which comes in the form of NUE's motion for a protective order) are supported by affidavits and memoranda. We have held two hearings on the matter.

2. If the tape is provided, the exact data which defendants now have on paper would be provided on tape. Once the data is in defendants' computer, they propose to analyze the data according to computer programs which their experts will write to accomplish the types of analysis requested by defense counsel. Their proposal is congruent with the Manual for Complex Litigation which, in recommending that courts encourage cooperation between parties in discovering computer information, adds:

"The court, in its discretion, may prescribe that discovery take place in any one of a number of other ways. For example, it may be that the information has not been recorded in the computer in a form in which it will be of maximum utility to the examining party. Accordingly, it may be appropriate for the court to facilitate, or even encourage, the examining party to develop his own programs for the analysis or reorganization of the machine-readable data so as to convert the information into a form that is more germane to the examiner's defense or prosecution of the action." *Manual for Complex Litigation* § 2.715.

3. Defendants describe this process as involving the manual typing of over 1,000 pages of data containing literally hundreds of thousands of numbers (e. g., number of models sold for each month for each year for each screen size, etc.) followed by the manual verification that each number was typed correctly.

ants are willing to pay the cost of this operation.[4]

There is a subtle play on words involved in this motion. Lawyers and judges often talk of "production" in terms of Rule 34 of the Federal Rules of Civil Procedure as involving the delivery to the opposing party of some existing document or tangible object. In connection with the present motion, however, the word "produce" is used in the sense of "manufacture"; i. e. NUE is being asked to manufacture or produce something which did not exist theretofore. NUE maintains that the discovery rules do not cognize such a request and that, in any event, what defendants request is protected by the work product privilege, F.R.Civ.P. 26(b)(3), because it reflects mental impressions, analysis, conclusions or thoughts of NUE's counsel or their representatives.[5] NUE thus resists the motion.[6]

NUE's work product objection stems ultimately from the fact that the data at issue was compiled under counsel's direction from raw data which has been available for defendants' inspection and copying in this litigation. NUE asserts that the process for establishing the computer base for the data at issue involved detailed "decision analysis", i. e. the sentient selection by counsel from voluminous raw material of a limited amount of data for inclusion in that base, and that the fruits of that process are therefore protected under the work product rubric. Acknowledging that the work product privilege is but a qualified evidentiary privilege, see *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), NUE adds that the defendants do not have substantial need for the computer tape, within the meaning of F.R.Civ.P. 26(b)(3), because they could create the tape themselves by the method described above. Given the colossal cost of this litigation, NUE suggests that the time and cost necessary to produce the tape is modest and that it does not constitute undue hardship within the meaning of the rule.

When this matter first came on for hearing, we denied the motion for discovery, in part because we misunderstood it, and in part because it was couched in different form than it now is. We were under the impression at that time that the defendants were seeking data stored by the plaintiffs somewhere within their computer software, which differed from the material on the paper printout, and further that the data was arrayed in a particular way so that disclosure might have revealed something about NUE's trial strategy. So viewed, the information sought would have been similar to plaintiff's trial support system which was protected from discovery under the work product notion in *In re: IBM Peripherals EDP Devices Antitrust Litigation*, 5 Computer Law Service Rep. 878 (N.D.Cal.1975). *See also Montrose Chemical Corp. of California v. Train*, 491 F.2d 63 (D.C.Cir.1974).

4. In connection with this procedure, defendants also request "record format information." The term "record format information" refers to the arrangement of the data in the computer-readable form provided. Without knowledge of the format and record length of the data contained on the tape, the defendants' computer system cannot be instructed to read the information because it does not know where to start or stop. The computer has no way to distinguish one record from another without being given record format instructions.

5. Rule 26(b)(3) provides:
    "Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

6. There is no dispute that the data sought is properly discoverable. Indeed, we ordered the plaintiffs to produce the information in Answers to Interrogatories, pursuant to a Rule 37 Motion.

An affidavit filed by NUE's computer expert explains that NUE, through its counsel, did in fact create a litigation support system on the basis of selection by counsel of a number of documents out of many for inclusion in a computer data base.[7] However, the defendants do not in fact seek a computer disc, or a computer tape extracted from that disc, which contains information selected for use in such a litigation support system. Rather, defendants' request is limited to exactly the same data (in the same arrangement) which NUE furnished defendants in paper computer printout reports. We are thus faced with a different question from that which we originally perceived.

It is true, as NUE complains, that no computer tape in the form requested by the defendants exists, and that the relief requested by defendants would require "the creation (e. g. manufacture) of a physical object not now in existence". The principal question before us, however, is whether that which defendants seek production (or manufacture) of is work product within the meaning of the Federal Rules. We conclude that it is not.

Ordinarily, in addressing the question whether given material is work product, we would turn to precedent, including the seminal case of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). We have canvassed the cases, but find nothing helpful. We are, therefore, constrained to analyze the facts before us in terms of the language of Rule 26. We have done so, but have failed to discover any "mental impressions, conclusions, opinions, or legal theories" therein. Neither do we find any "trial

strategy". Rather, we find that all the defendants seek is precisely the same data as is contained in the computer printouts which were furnished in discovery. To the extent that an issue exists as to selection and arrangement of that data, it appears that it is the defendants who decided what data NUE was to gather and how it should be arranged by virtue of the framing of their interrogatories. Moreover, to the extent that any "decision analysis" by NUE was involved, the paper computer printout has already revealed whatever data, activity, or other "decisional analysis" considerations were present.

As defendants note, the only difference between what defendants already have and what they request is that a computer cannot read what NUE has previously produced. That is a mechanical, not a qualitative, difference. It must be remembered that the actual data being sought is model-by-model production, sales, and price data, which is *not* claimed to have been the product of any attorney input. And, finally, it must be noted that it is clear from the affidavits which have been filed that NUE does not have to produce its entire data base or computerized trial support system in order to adequately respond to defendants' request.[8] Rather, as defendants' affidavits demonstrate, in order to produce the computer-printed information in a tape form, all that is necessary is for NUE's computer specialist to re-run the instructions used to extract and print the computer reports on paper with a new instruction to print the results on computer-readable form like magnetic tape rather than in paper copy form.[9] To repeat, what is sought

---

7. These were coded, key-punched and processed for input into NUE's computer system. Specific computer programs were designed for the litigation support system to instruct the computer to perform various computer functions as a part of NUE's trial preparation.

8. Thus, there is no concern that defendants will have access to proprietary information that might be on NUE's disc which stores the accumulated data.

9. The model-by-model data is now stored on a disc, an object which looks like a phonograph

record but stores data in a form that can be read by a computer. According to the affidavit of the defendants' computer expert, the basic tasks and instructions which would be commonly used to transfer the model-by-model data in NUE's disc to a tape to be used and read by defendants' computer are as follows.

The first procedure is to provide the computer with the set of instructions which it is to perform. These may be typed in from a terminal keyboard or read into the computer using some computer-readable form like punched

is not work product within the meaning of Rule 26.

■ In view of the foregoing analysis we must confront the only remaining question, i. e. whether there is anything in the federal discovery rules which relieves NUE from the obligation to perform the labor necessary to produce, the requested tape. Notwithstanding NUE's protestations, both common sense and a growing body of precedent support defendants' request. While we can find no case in which the court has ordered the programming of a computer to manufacture a computer tape not theretofore in physical existence, a number of cases have ordered the production, in the Rule 34 sense, of computer materials.

In *Quadrini v. Sikorsky Aircraft Division, United Aircraft Corporation*, 74 F.R.D. 594 (D.Conn.1977) Judge Newman granted defendant's motion to compel plaintiff to produce, *inter alia*, data processing cards, which are a type of computer-readable materials. In *Pearl Brewing Co. v. Jos. Schlitz Brewing Co.*, 415 F.Supp. 1122, 1134–41 (S.D.Tex.1976), Judge Bue allowed defendants under Rule 26(b)(4)(B) to inspect and copy "the entire system documentation"—i. e., the underlying computer program which performed certain analysis—prepared by certain experts for plaintiff's computer-generated model. In *Adams v. Dan River Mills, Inc.*, 54 F.R.D. 220, 222 (W.D.Va. 1972), the court ordered production of computer-readable data material, saying:

"Because of the accuracy and inexpensiveness of producing the requested documents in the case at bar, this court sees

no reason why the defendant should not be required to produce the computer cards or tapes . . . to the plaintiff."

And, in *United States v. Davey*, 543 F.2d 996 (2d Cir. 1976), an Internal Revenue summons proceeding, the Court of Appeals ordered the respondent to produce magnetic tapes in its possession, which contained financial data, even though the same information had already been proffered to the Internal Revenue Service in printout form. The district court in *Davey* had ordered production of the computer tapes, commenting that their production would make unnecessary "a great deal of manual examination of many thousands of printout pages." 404 F.Supp. 1283, 1284 (S.D.N.Y. 1975), *rev'd on other grounds, Davey, supra.* The Second Circuit affirmed on this point. It noted that "inspection of the requested tapes . . . would . . . insure greater accuracy and a substantial saving in auditing time," and held that the taxpayer could not "give the IRS requested information in an inconvenient form with a view to immunizing itself from demands for other records containing the same relevant information in a more convenient form." 543 F.2d at 1000. *See generally* Horning, *Securing Discovery of Computer Based or Computer Generated Evidence*, in New York Law Journal, Federal Discovery in Complex Civil Cases at 669 (1980) (collecting and analyzing cases).

As some of the decisions have observed, the 1970 amendments to Rule 34 of the Federal Rules of Civil Procedure made it

---

cards. In the latter case, a stack of cards containing the program or set of instructions is read by a device known as a card reader. The card reader electronically tells the computer what it has "read," the computer retains the set of instructions in its electronic "memory," and begins to perform the instructions it has been given. The first substantive instruction would tell the computer to retrieve the data from a file, in this case contained on a disc. This instruction or subset of instructions would tell the computer to read sequentially the file containing all price and volume data on NUE's television sales between 1960 and 1972 into the active "memory" of the central processing unit for calculation. The next instruction or subset

of instructions would tell the computer what to do with the data it has retrieved. In this case, the program would instruct the computer to find all units of monochrome 15″ televisions of a certain model type in a certain year, total the units, and hold that total in its memory while it does the same for all monochrome 17″ televisions. This process would be applied to the data for each NUE TV model during the relevant time period. After all the assembling and total is complete, the central processing unit would retain all of the data in its memory until it responds to the final set of instructions, those that ask it to record the data in a particular format on some particular form of output device; i. e., printer or tape drive.

clear that computerized records are subject to requests for production. Those amendments added to the list in Rule 34(a)(1) of matters subject to production the language "and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form." The 1970 Advisory Committee Notes explained:

> The inclusive description of "documents" is revised to accord with changing technology. It makes clear that Rule 34 applies to electronic data compilations from which information can be obtained only with the use of detection devices, and that when the data can as a practical matter be made usable by the discovering party only through respondent's devices, respondent may be required to use his devices to translate the data into usable form. In many instances, this means that respondent will have to supply a print-out of computer data.

48 F.R.D. 487, 527 (1970). The Rule thus provides that data be produced in a "reasonably usable form." The Advisory Committee contemplated that this usable form would often consist of a printout of the data stored electronically, but did not preclude production of the information in an electronic medium. *See* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2218 (1970). The Manual for Complex Litigation, on the other hand, views the production of computer data records in machine-readable form as primary in complex cases, with the production of printouts as a secondary alternative:

> In the computer context, the basic types of machine records commonly utilized include: (1) punched cards; (2) paper and magnetic tapes; and (3) a variety of other machine oriented components which record and store data. In the absence of special considerations such as privilege, work product immunity, or the presence of industrial or trade secrets in the machine, readable computerized data (including computerized analyses) in any of the above-mentioned forms should be freely discoverable. If the discovering party has data processing equipment that is compatible with that of the owners of the computer records, *delivery of the machine-readable version of the information, or a copy thereof,* will often be sufficient. When the discovering party's equipment is not compatible, or he has no computer equipment, delivery of a print-out of the machine-readable records may provide a reasonable alternative mode of discovery.

Manual for Complex Litigation § 2.715 (emphasis added). While a printout might be "reasonably usable" within the meaning of Rule 34, the production of a party's data in a form which is directly readable by the adverse party's computers is the preferred alternative, according to the editors of the Manual for Complex Litigation.

Although there may be some difference between requiring the production of existing tapes and requiring a party to so program the computer as to produce data in computer-readable as opposed to printout form, we find it to be a distinction without a difference, at least in the circumstances of this case. As we have noted, the defendants have expressed their willingness to pay the costs of whatever operations are necessary to manufacture a computer-readable tape. As a result, the problem of allocating the burden of discovery expense, which might be significant in otherwise similar situations, *see* Horning, *supra*, at 675–87, is nonexistent here. Apart from the possible expense, the manufacture of a machine-readable copy of a computer disc is in principle no different from the manufacture of a photocopy of a written document, a common enough method of responding to a request for document production.

It may well be that Judge Charles E. Clark and the framers of the Federal Rules of Civil Procedure could not foresee the computer age. However, we know we now live in an era when much of the data which our society desires to retain is stored in computer discs. This process will escalate in years to come; we suspect that by the year 2000 virtually all data will be stored in some form of computer memory. To interpret the Federal Rules which, after all, are

to be construed to "secure the just, speedy, and *inexpensive* determination of every action," F.R.Civ.P. 1, (emphasis added), in a manner which would preclude the production of material such as is requested here, would eventually defeat their purpose.

Defendants' request will be granted.

An appropriate order follows.