Catherine E. FAUTECK, et al., Plaintiffs,

v.

MONTGOMERY WARD & CO., INC., Defendant.

No. 78 C 1189.

United States District Court, N. D. Illinois, E. D.

Sept. 4, 1980.

On Motion To Compel Disclosure of Personnel Records Dec. 22, 1980.

Kenneth Flaxman, Thomas R. Meites, Chicago, Ill., Susan Margaret Vance, Mandel, Lipton & Stevenson, Chicago, Ill., for plaintiffs.

Lawrence I. Kipperman, Mark C. Curran, James S. Whitehead, Sidley & Austin, Chicago, Ill., Ronald Cooper, N. Thompson Powers, Steptoe & Johnson, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

This is a class action alleging that the employment practices of defendant Montgomery Ward & Company violate Title VII of the Civil Rights Act of 1964. Plaintiffs are four female past and present employees of Montgomery Ward's Merchandising Group in Chicago, and represent a class of similarly situated employees. Plaintiffs have presented the court with two motions: a motion to authorize written communication with class members to solicit financial

contributions for the maintenance of this action, and a motion to compel the production of employment records in computer readable form.

## I.

The first motion is the third attempt by plaintiffs to send some form of notice to class members. The first was denied by Judge Will, to whom the case was originally assigned, on April 13, 1979. Judge Will stated that because the case was a Rule 23(b)(2), rather than a (b)(3) class action, notice was unnecessary. However, Judge Will also said that he was willing to entertain a motion to authorize some sort of communication with class members. Plaintiffs renewed their motion to send notice to class members before this court. The motion was denied on October 31, 1979, "without prejudice to the renewal of the motion at the conclusion of discovery and before the submission of the final pre-trial order."

Different grounds are presented for the present motion. Plaintiffs wish to do more than to inform class members of the pendency of this action. They state that there is no reason for them to individually advance the amount needed for trial preparation of a case brought on behalf of a large class. They wish to avoid this financial burden by soliciting contributions from class members. A similar procedure was allowed by the court in *Norris v. Colonial Commercial Corp.*, 77 F.R.D. 672 (S.D.Ohio 1977). *Norris*, however, was a (b)(3) class action, in which notice and an opportunity to "opt out" of the class, had already been sent to class members. Here, no court-sanctioned information has been disseminated to class members, whose first knowledge of this suit would be in the form of a request for contributions. This is a complicated case, involving allegations of discrimination in various aspects of defendant's business. Unless class members are provided with extensive information about the case, it will be virtually impossible for them to make an intelligent decision about whether to help fund it. Because not all class members have been affected by defendant's employ-

ment practices in the same way, defendant's liability toward each type of employee may differ. Persons whose stake in the outcome of this litigation is unknown may be asked to help finance it. Thus, there are serious risks presented of misleading those who are asked to contribute.

It was just this type of risk which local civil rule 22 was designed to avoid. This rule forbids communication with actual or potential class members not formal parties to the action without the prior approval of the court. It was modeled on sample local rule 7 in the *Manual for Complex Litigation*, Part II, § 1.41. The reasons for rule are discussed in Part I, § 1.41 of the Manual. One of the "abuses" of the class action device sought to be prevented by the rule is the solicitation of funds from class members to pay litigation expenses and fees.

> "To the party solicited, solicitation may appear to be an authorized activity approved by the court, simply because of references to the title of the court, the style of the action, the name of the judge, and to official processes. Such unapproved solicitation may be of doubtful ethical propriety and may result in well founded dissatisfaction with the judicial management of the action."

*Id.* 1 Moore's Federal Practice, Pt. 2 at p. 32. The court finds that no adequate justification has been presented for allowing the proposed communication, which would cause precisely the dangers which local rule 22 was designed to eliminate.

Plaintiff argues that, even so, the proposed communication with class members is protected by the First Amendment, and cannot be constitutionally prohibited by this court. In support of this argument, plaintiff cites *Bernard v. Gulf Oil Co.*, 619 F.2d 459 (5th Cir. 1980), in which the Fifth Circuit *en banc*, held that a court order along the lines of local rule 22 was a prior restraint on protected First Amendment activity, and was unconstitutional on its face. Before dealing with the question of the constitutionality of the local rule, the court will consider whether the proposed commu-

nication is protected activity. *Bernard* does not hold that every type of communication with potential class members is protected by the First Amendment; only that the district court's order swept such activity within its scope.

■ In *Bernard,* the communication forbidden by the district court was a notice advising black employees of the defendant not to sign a release distributed by the defendant before they consulted a lawyer. The notice further stated that lawyers representing the fellow workers of those notified, in a suit filed on their behalf, would speak to them for free. A much stronger argument can be made that this type of communication is protected by the First Amendment than is the solicitation for funds contemplated in this case. Such a notice may have been essential to continued vigorous prosecution of the lawsuit, which can itself be viewed as a means of protected expression. *See In re Primus,* 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978); *N.A.A. C.P. v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Moreover, this notice may have been necessary to make the class members aware of their rights, and to avoid the possibility that they would be misled by the defendant's offer of settlement. In this case, by contrast, the proposed communication does nothing to further the interests of class members, and may itself mislead class members. It is merely designed to alleviate the inconvenience to the named plaintiffs of having to bear the costs of litigation alone, costs they have not denied that they are able and willing to bear. This interest does not outweigh the confusion that will result from sending the communication.

In further support of their argument that the proposed communication is protected activity, plaintiffs cite a footnote to the *Bernard* opinion, which states in part:

"*In at least some situations* the collection or solicitation of funds to defray litigation costs is a necessary adjunct to obtaining meaningful access to the courts. Such activity is therefore deserving of constitutional protection *in appropriate cases.*"

619 F.2d at 473 n. 25 (emphasis supplied). As can be seen, this footnote does not unequivocally support plaintiffs' position. It has not been shown that this case is one in which solicitation of funds is necessary to protect plaintiffs' constitutional right of access to the courts. As noted, the only consequence of barring solicitation of expenses by the named plaintiffs would be that they would have to bear these expenses alone. A different situation would be presented if the individual plaintiffs were unable to finance this lawsuit themselves, but in this case the court cannot say that plaintiffs' constitutional right of access to the courts is impeded by a ban on solicitation.

If a lawsuit were not pending, it would not be unreasonable to argue that plaintiffs have a First Amendment right to discuss their grievances with fellow employees and even to solicit funds and potential plaintiffs for a legal attack. However, in a suit such as this one which has been pending for more than two years, any such First Amendment rights must be balanced against the countervailing duty of this court to properly conduct the proceedings before it, so as to insure a fair trial to all parties involved. *See Manual for Complex Litigation,* Part I, § 1.41 n. 33, 1 Moore's Federal Practice Part 2 at pp. 32–33. The court finds that it is necessary to prohibit the proposed solicitation of funds at this time in order to properly discharge this responsibility.

■ Because the court has found that the communication, which plaintiffs seek to send to class members is not protected First Amendment activity, it is not directly presented with the question whether local rule 22 or this order constitutes an unconstitutional prior restraint on such activity. The court notes, however, that only the Fifth Circuit has thus far explicitly taken the position that such a rule or order is unconstitutional, while the Seventh Circuit, as recently as April, 1980, has expressed its approval of local rule 22. *Oswald v. McGarr,* 620 F.2d 1190 (7th Cir. 1980). To attach the label "prior restraint" to an order or rule restricting communications to

class members does not compel a finding of unconstitutionality. A practice that imposes a prior restraint merely brings with it a heavy presumption of unconstitutionality. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). That presumption can be dispelled where the proper procedural safeguards accompany the restraint, and where the restraint is sufficiently limited in scope.

■ Local rule 22 is not an absolute prohibition on communication with class members. It merely requires prior judicial approval before such communication can be undertaken. In a proper case, as where a constitutional right to communicate is asserted, that prior approval need not be long delayed. As the court in *Bernard* noted, judicial responses are quickened when First Amendment rights are asserted. 619 F.2d at 470. Further, local rule 22 must be seen in the context of the litigation it is meant to regulate. It is but one of the restrictions on speech which every party filing a lawsuit must accept in order to insure that the other side receives a fair trial. The rule is a reasonable approach to the proper handling of the complexities of class action litigation. The court concludes that plaintiffs must, now and in the future, comply with the local rule governing communications with class members by submitting any such proposed communications to the court for prior approval.

## II.

Plaintiffs' motion to compel the production of documents in computer readable form also relies upon the convenience and economies that will result from granting their request. In response to this motion, defendant asserts the following: defendant has agreed to produce all the underlying personnel records upon which it will rely in producing any computer printouts. The "computer analyses" that defendant is undertaking are not part of the ordinary course of compiling personnel information by Montgomery Ward, but have rather been undertaken solely in preparation for this lawsuit. The computer-assisted information that defendant is preparing could be prepared just as easily by plaintiffs as by defendant. The computer analyses are directed by defendant's attorneys, and necessarily reveal the mental processes and defense strategies of these attorneys. They have selected the data to be collected and the manner in which it is to be compiled. Finally, defendant assures the plaintiffs that should any of the computer analyses it is in the process of preparing form the basis for any expert testimony it intends to introduce, the material will be made available to plaintiffs for inspection and copying.

In response, plaintiffs state that the work being undertaken by defendant is merely mechanical retyping of records and does not constitute defendant's attorneys' work product. Even if this information could be considered work product, plaintiffs state that they have demonstrated the "undue hardship" under F.R.Civ.P. 26(b)(3) necessary to justify production. In view of the contested issues of fact that are relevant to ruling on this motion to compel, the court will not issue such a ruling at this time. The court has insufficient information before it to make a determination whether the documents at issue are in fact merely the result of a mechanical process which it would be wasteful to compel plaintiffs to repeat, or the product of strategic decisions by defendant's attorneys. Plaintiffs are advised, however, that if the arguments made by defendant in its brief can be supported by competent proof, whether by affidavit or an *in camera* submission of some of the documents in question, plaintiffs' motion would have to be denied.

Plaintiffs' motion to authorize written communication with class members is denied. Plaintiffs' motion to compel production of documents is continued, pending resolution of contested factual issues discussed in this opinion. Defendant is to make any submissions in support of its position that the motion to compel should be denied within 20 days from the date of entry of this order. Plaintiffs are given 20 days thereafter to respond.

## ON MOTION TO COMPEL DISCLOSURE OF PERSONNEL RECORDS

■ This is a class action alleging sexual discrimination in the employment policies of defendant Montgomery Ward & Co. Currently pending is plaintiffs' motion to compel disclosure of certain of defendant's personnel records in computer readable form. Specifically, plaintiffs seek eight computer readable items of information with respect to all of defendant's salaried and hourly employees dating from September 4, 1975:

(a) Name.

(b) Social Security number.

(c) Education.

(d) Performance rating.

(e) Communications with Wards about promotion or transfers.

(f) Salary or hourly rate of compensation.

(g) Education subsequent to hire.

(h) Prior experience.

Defendant has objected to this request, contending that the transformation of the information sought into computer readable form entailed legal judgments that are protectible attorney's work product. Plaintiffs contend that this is a largely mechanical process which does not justify invocation of any privilege.

In its memorandum opinion of September 4, 1980, this court concluded that the parties' arguments turned on questions of fact that could not be resolved at that time. Accordingly, the parties were invited to submit affidavits and other evidentiary material in support of their claims. The court noted its willingness to review documents in camera if necessary. Having received the supplementary material requested, this motion to compel is now ripe for decision.

Essentially, the court views defendant as being in somewhat of a dilemma. If, as defendant contends, the process by which Ward's personnel records are being encoded in computer readable form entails the exercise of considerable judgment, and if the database thus created will serve as the foundation of defendant's expert trial testimony, then it can hardly be disputed that plaintiffs will eventually be permitted to attack that testimony by attacking the judgments that went into building the database on which it rests. Though it is precisely these judgments that defendant now seeks to protect under Rule 26 (b)(3), that Rule expressly does not apply to material relating to expert testimony. Such disclosures are governed by Rule 26(b)(4), a Rule which is carefully drawn to assure competent cross-examination of trial experts. *See* Advisory Committee Notes. Consequently, it is clear that defendant's database will eventually be discoverable prior to trial. F.R.Civ.P. 26(b)(4)(A)(ii); *Wheeling-Pittsburgh Steel Corp. v. Underwriters Laboratories, Inc.*, 81 F.R.D. 8, 12 (N.D. Ill.1978); *Pearl Brewing Company v. Joseph Schlitz Brewing Co.*, 415 F.Supp. 1122, 1134–1140 (S.D.Texas 1976). If, in contrast, plaintiffs' view of the compilation process is the more accurate, and this process is essentially mechanical in nature, then no privilege arises. In short, on either version of the act of computerization, the computerized database will eventually be discoverable.

Arguably, if this case is said to rest on the first horn of the dilemma, it may be that discovery of this material is not *presently* proper. That is, it might be contended that material which will be discoverable immediately before trial for the purpose of permitting an effective cross-examination of defendant's expert should not be discoverable well in advance of trial for the purpose of accumulating information that defendant has compiled at great expense. This argument would be persuasive were it not the case that disclosure of the material in computer readable form at this time will materially advance this litigation without seriously prejudicing defendant.

It is clear that denial of this motion will compel plaintiffs to proceed with their own encodation of Ward's personnel data. Both parties have emphasized that this is a time-consuming process. In a litigation that has already witnessed more than two years of discovery with no end to the process in sight, the delay entailed by this result would be highly undesirable.

Moreover, present discovery of defendant's computerized database will not result in any material prejudice to defendant. Wards contends that the process of database formulation entails numerous strategic legal decisions which should not be disclosed at this time. However, despite the court's offer to review material in camera, defendant has made this assertion in purely conclusory terms. In contrast, plaintiffs have offered a detailed, well-reasoned, letter from their expert asserting that the judgments entailed in database compilation are essentially statistical in nature and that the methodology of computerizing personnel records for litigation purposes is well established in the field. Thus, the record presently before the court fails to justify defendant's fears. Moreover, the court notes that whatever strategic advantage plaintiffs derive from this disclosure can be offset by imposing a reciprocal disclosure obligation. Finally, as to the element of unfairness that would result from a forced disclosure of a compilation made at great expense to defendant, this problem can be offset by requiring plaintiffs to share defendant's costs. F.R.Civ.P. 26(b)(4)(C)(ii).

For all of the above reasons, the court hereby enters the following order: Defendant is required to disclose to plaintiffs all of Ward's personnel records that have been put in computer readable form insofar as those records relate the name, social security number, education, performance rating, communications with Wards about promotion or transfer, salary or hourly rate of compensation, education subsequent to hire, and prior experience for all persons employed in salary or hourly positions from September 4, 1975, to the present. Upon plaintiffs' completion of a similar computerized database, that database too will be discoverable. This order is contingent on plaintiffs' willingness to reimburse defendant for 50% of compilation costs. Should defendant eventually seek plaintiffs' computerized data, its right to such discovery will also be contingent on its willingness to make similar reimbursement.