John R. WILLIAMS, et al., Plaintiffs,

v.

E.I. du PONT de NEMOURS & CO., et al., Defendants.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

E.I. du PONT de NEMOURS & CO., et al., Defendants.

Nos. 7748–B, 7874–B.

United States District Court, W.D. Kentucky, Louisville Division.

Oct. 23, 1987.

---

Jack Greenberg, New York City, Juanita Logan Christian, Ann Arbor, Mich., for plaintiff John R. Williams.

Joseph Ray Terry, Memphis, Tenn., for E.E.O.C.

Charles W. Brooks, Louisville, Ky., for defendant Union.

Edgar A. Zingman, Louisville, Ky., for defendant du Pont.

## MEMORANDUM AND ORDER

BALLANTINE, District Judge.

This matter is before the Court on the motion of the plaintiff, Equal Employment Opportunity Commission (Commission), for the entry of a protective order limiting discovery sought by the defendant, E.I. du Pont de Nemours & Co. (du Pont) and on the motion of the defendant du Pont for further discovery or, in the alternative, a motion for an order compelling discovery from the plaintiff Commission. Fed.R.Civ. P. 26(c), 26(b)(4)(A)(ii) and 37.

This is a consolidated action by the Commission and a private plaintiff pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. against du Pont and the Neoprene Union. It is a complex case and has been in litigation since 1973. The Commission previously discovered, from du Pont, thirty years of employment records and other related documents which were then converted into computer readable data by the Commission's expert, Dr. Howard P. Tuckman. Dr. Tuckman analyzed the data and ran certain statistical tests pursuant to instructions and requests from the Commission's attorneys. The aggregate factual data and Dr. Tuckman's analysis and opinion were compiled into a final report and furnished to du Pont on April 16, 1987. The Commission has also furnished du Pont with a preliminary report and the return of the employment documents which formed the basis for Dr. Tuckman' report.

On June 16, 1987, du Pont served the Commission with interrogatories and requests for production of documents. The Commission responded to the interrogatories, but objected to du Pont's request to produce "a copy of the computerized database in the form of the computer storage disc, the codebook, all documents used in encoding the database, documents relating to the program(s) used to create the database, the user's manual and all print-outs generated through the use of the database."[1] The Commission concedes that computer-stored information is generally discoverable, but moved for a protective order on the grounds that 1) du Pont's request exceeds the scope of discovery allowed pursuant to Rule 26(b)(4)(A)(i); 2) the request is overbroad and burdensome and 3) the information underlying the expert's reports, i.e., the raw data originally provided by du Pont and the identification of the

1. The term "database" refers to the collection of data in the computer.

database and description of the encoding system and methodology used, provided through interrogatories, is in du Pont's possession. The Commission requests that "discovery of these requested materials not be had or, in the alternative ... that discovery may be had only on the condition that du Pont pay to the Commission a fair portion of the fees and expenses incurred by the Commission in responding to the discovery and in obtaining the factual data requested."

Du Pont contends that further discovery or discovery of the requested documents is necessary because 1) the information is essential for effective cross-examination of Dr. Tuckman; 2) the database must be physically examined for accuracy; 3) full understanding of the contents of the database is necessary before du Pont's experts can properly analyze the data output and 4) to have du Pont's clerical personnel manually create a database identical to the Commission's, if possible, would constitute a "time-consuming, duplicative and expensive effort." [2]

Rule 34 provides for the discovery of documents. The Advisory Committee Note (1970 Amendment) states:

"Rule 34 applies to electronic data compilations from which information can be obtained only with the use of detection devices, and that when the data can *as a practical matter* be made usable by the discovering party only through respondent's devices, respondent may be required to use his devices to translate the data into usable form...." (Emphasis added.)

Rule 26(b)(3) provides that discovery of materials prepared "in anticipation of trial by or for another party" may be discovered "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means...."

Rule 26(b)(4)(A)(i) permits a party to obtain, through interrogatories, information concerning an expert witness who will testify at trial as to the identity of the expert, the subject matter upon which he will testify, the "substance of the facts and opinions to which [he] is expected to testify and a summary of the grounds of each opinion." Further discovery of the expert witness may be obtained only by an order of the Court. Fed.R.Civ.P. 26(b)(4)(A)(ii).

In addition:

"[t]he court may order further discovery, and it has ample power to regulate its timing and scope and to prevent abuse. Ordinarily, the order for further discovery shall compensate the expert for his time, and may compensate the party who intends to use the expert for past expenses reasonably incurred in obtaining facts or opinions from the expert."

Fed.R.Civ.P. 26(b)(4) advisory committee note, 1970 amendment.

Du Pont has cited to numerous cases in which computerized business or administrative records were ordered to be made available to a party seeking discovery, even though the records had been furnished to the discovering party in a paper format. *National Union Electric Corp. v. Matsushita Electric Industrial Co., Ltd.*, 494 F.Supp. 1257 (E.D.Pa.1980); *Daewoo Electronics Co., Ltd. v. U.S.*, 650 F.Supp. 1003 (CIT 1986); *Adams v. Dan River Mills, Inc.*, 54 F.R.D. 220 (W.D.Va.1972). However, the case at hand is distinguishable in that the information sought by du Pont was originally supplied by du Pont to the Commission. The Commission, at its own expense, in preparation for trial, gleaned and encoded relevant information from the massive documentation onto a computer disc. Du Pont now wants the disc, even though it has possession of its original documentation.

The Commission argues that discovery of the now computerized data would be unfair and would allow du Pont to benefit from the Commission's better trial preparation.

2. The "recreation" would involve manually keypunching 3,189 employee personnel records, thirty-two years of collective bargaining agreements, six sets of responses to interrogatories and requests to produce and two sets of admissions into du Pont's computer.

However, this case is based on Title VII and, as such, the plaintiff's expert's testimony, based on statistical analysis, "is likely to be determinative" to show discriminatory motive through an employer's pattern of conduct. *See* Fed.R.Civ.P. 26(b)(4) advisory committee note, 1970 amendment.

"In cases of this character, a prohibition against discovery of information held by expert witnesses produces in acute form the very evils that discovery has been created to prevent. Effective cross-examination [or rebuttal] of an expert witness requires advance preparation. The lawyer even with the help of his own experts frequently cannot anticipate the particular approach his adversary's expert will take or the data on which he will base his judgment on the stand."

*Id.*

Du Pont has demonstrated that to encode manually the massive documentation originally afforded to the Commission by du Pont and necessary to a full understanding of Dr. Tuckman's report would constitute an "undue hardship" to du Pont in terms of the time and expense required by the procedure. Fed.R.Civ.P. 26(b)(3). The rules of discovery "shall be construed to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. Du Pont has also established that access to the Codebooks and user's manual used to analyze the raw data and arrive at Dr. Tuckman's final report is necessary for effective cross-examination and to establish the accuracy of the data output. *See* Fed. R.Civ.P. 26(b)(4) advisory committee note, 1970 amendment; 34 advisory committee note, 1970 amendment and § 21.446 Manual for Complex Litigation, Second (1985). Du Pont's request for "documents relating to the program(s) used to create the database" and "all print-outs generated through the use of the database" is overbroad and may introduce into the discovery documents that are not relevant and which reveal to the defendant alternative methods of analysis or programs outside the scope of the expert's report. Fed.R.Civ.P. 26(c).

The motion of the plaintiff, Equal Employment Opportunity Commission for a protective order limiting discovery by the defendant, E.I. du Pont de Nemours & Co., will be partially granted in that the defendant may not discover from the plaintiff, "documents relating to the program(s) used to create the database," "all print-outs generated through the use of the database" or the copyighted "Statpac" program.

The motion of the defendant E.I. du Pont de Nemours & Co., for an order compelling discovery from the plaintiff, Equal Employment Opportunity commission will be denied.

The motion of the defendant, E.I. du Pont de Nemours & Co., for an order for further discovery from the plaintiff, Equal Employment Opportunity Commission, will be partially granted in that the defendant may discover, at its own expense, copies of the "computerized database in the form of the computer storage disc," the "codebooks," the "user's manual" and "all documents used in encoding the database," with the exception of the copyrighted "Statpac" which may be purchased from a vendor.

In addition, du Pont shall pay to the Commission a "fair portion of the fees and expenses incurred" in the past by the Commission for the work of the Commission's expert in encoding the requested data and formulating the database. Such "fair portion" shall be agreed upon by the parties.