Curtis HINES, Jr., et al., Plaintiffs,

v.

Sheila E. WIDNALL, Defendant.

No. 3:96CV70/RV/MD.

United States District Court,
N.D. Florida,
Pensacola Division.

Aug. 10, 1998.

Paul Sonn, Charles Stephen Ralston, NAACP Legal Defense & Education Fund Inc., New York City, Ralph Alan Peterson, Beggs & Lane, Pensacola, FL, Gregory A. Clarick, Holly D. Jarmul, Mark H. Alcott, Leslie C. Murray, Paul Weiss Rifkind Wharton & Garrison, New York City, for plaintiffs.

E. Bryan Wilson, U.S. Attorney, Northern District of Florida, Tallahassee, FL, Pamela A. Moine, U.S. Department of Justice, U.S. Attorney's Office, Pensacola, FL, Christopher D. Thurner, U.S. Air Force, Eglin Air Force Base, FL, for defendant.

### ORDER GRANTING MOTION TO COMPEL

DAVIS, United States Magistrate Judge.

Before the court is plaintiffs' motion to compel (doc. 156) to which defendant has responded (doc. 161). Plaintiff was permitted to file a reply (doc. 163, 168). A hearing was held on August 3, 1998.

In this action plaintiffs, acting in their own behalf and representing a class, sue the Secretary of the Department of the Air Force claiming violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981a, 2000e, et seq., as amended. They allege racial discrimination at Eglin Air Force Base, located in the Northern District of Florida. Plaintiff now seeks to obtain certain computer records in the possession of the defendant. The following facts with respect to those records are not in dispute.

Subsequent to the filing of this action the various attorneys representing the defendant decided to computer image certain records primarily pertaining to employment and staffing actions. Counsel thought that because they were geographically dispersed, computerizing the records would simplify review of the documents by the attorneys and support staff. The records were imaged electronically by a private contractor at de-

fendant's expense. The original documents were maintained by the defendant in the normal course of its business, but the electronic images were developed solely at the direction of defendant's attorneys and in anticipation of (in fact after the commencement of) this litigation. Defendant does not dispute that the paper records themselves, including paper copies of the records imaged at defense counsel's direction, are discoverable, and these have been produced to plaintiffs. What has not been produced is the computerized images themselves.

The documents were imaged, not scanned. This means they were not processed using character recognition software such that the image becomes a text-searchable computer file version of the document. Therefore, separate software must be used to render the images searchable. Defendant's attorneys procured such software and thus can use the images to search the records and make appropriate analysis of their contents.

Plaintiffs seek a copy, presumably on computer discs, of the computerized images. Plaintiffs say that possession of the computerized images would give them the ability to search the documents more easily and systematically than can be done by hand. Plaintiffs argue that (a) the computerized images are not attorney work product; (b) if they are attorney work product, they are discoverable because (1) defendant has so conceded and (2) plaintiffs have a substantial need and are unable without undue hardship to obtain their substantial equivalent by other means. Defendant resists production, claiming that the images are attorney work product and protected from discovery under Rule 26(b)(3) Fed.R.Civ.P., and that plaintiffs cannot show the requisite need and hardship.

## ANALYSIS

### Attorney Work Product

Plaintiffs contend that the images are not attorney work product and are therefore entitled to no protection. Plaintiffs cite *Timk-*

en Co. v. United States, 659 F.Supp. 239 (C.I.T.1987) [1] and *National Union Electric Corp. v. Matsushita Electric Indus. Co.*, 494 F.Supp. 1257 (E.D.Pa.1980). In *National Union*, defendants asked the court to require plaintiff to create computer readable tapes containing identical data previously supplied by the plaintiff in answers to defendant's interrogatories. That involved compiling records kept in the ordinary course of business and then "printing" the results in computer-readable form. Unlike here, the original compilation of documents was produced in an answer to interrogatories, not by counsel in anticipation of litigation or for the specific purpose of assisting in managing the litigation. Like here, however, the records sought were substantively identical to those already produced, and most importantly, contained no "decision analysis" or "mental impressions, conclusions, opinions, or legal theories." *National Union*, 494 F.Supp. at 1260. The court concluded that without attorney input into the records, there was no attorney work product and the records were discoverable. Defendant attempts to distinguish the *National Union* case by stating that, contrary to plaintiffs' argument, the computer tapes in question were not created in anticipation of litigation but were created in the ordinary course of business. Regardless of whether that is true, it misses the point with regard to the involvement of the attorney's mental impressions and legal theories. The *National Union* court specifically held that no such impressions or theories were contained within the documents and that the materials requested therefore did not constitute work product. It was on that basis that the computer-readable tapes were ordered "produced," both in the sense of manufactured and provided to the defendants.

The doctrine of attorney work product is a creation of the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Counsel in that case was

---

1. Plaintiffs' reliance on *Timken* is misplaced. The computer records in that case were not attorney work product and were not claimed to be attorney work product. Rather, although the records were kept in the ordinary course of busi-

ness, production was resisted on the basis of trade secret confidentiality. Thus, although the Court of International Trade required their production, its decision provides no guidance in this case.

retained by the owner of a tug involved in a maritime accident. Before suit was filed counsel took statements from survivors "with an eye toward the anticipated litigation." *Hickman,* 329 U.S. at 498, 67 S.Ct. at 387. After suit was filed, interrogatories were propounded asking whether such statements were taken, and demanding their production. There was at that time no provision in the federal rules comparable to Rule 26(b)(3) dealing with trial preparation materials. There was only a provision in Rule 34 requiring "good cause" to be shown before documents would be ordered produced. The Supreme Court characterized the plaintiffs' requests for the statements as "an attempt to secure the production of written statements and mental impressions contained in the files and the mind of the attorney ...." *Hickman,* 329 U.S. at 509, 67 S.Ct. at 392. The court held that the requested documents were protected from discovery as attorney work product, stating:

> Proper preparation of a client's case demands that [counsel] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case (*Hickman v. Taylor*, 153 F.2d 212, 223 (1945)) as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman,* 329 U.S. at 511, 67 S.Ct. at 393, 394. It is thus clear that the Supreme Court's reasoning in *Hickman* was not just that the statements had been taken in anticipation of litigation, but that they were taken in such a manner that their disclosure might reveal mental impressions of a party's attorney.

The federal rules were amended in 1970 to add Rule 26(b)(3). That subdivision was created to synthesize developments in the law of discovery after *Hickman.* As noted above, Rule 34 required "good cause" for an order for the production of documents and *Hickman* had created a work product exception to the discoverability of certain documents. In the intervening years, federal courts had confused the issue of whether "good cause" and the necessity and justification for the production of otherwise protected work product were interrelated. *See* Rule 26, Fed.R.Civ. P., Advisory Committee Notes on 1970 Amendments. In the 1970 Amendments, the good cause requirement and the requirement for a court order for the production of documents were removed. In their stead, and in codification of the *Hickman* doctrine, Rule 26(b)(3) was created. It states in part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representation (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Thus, documents prepared in anticipation of litigation or for trial are discoverable only under certain limited circumstances. Defendant says that its computer records were prepared in anticipation of litigation and that Rule 26(b)(3) therefore clearly applies. However, that begs the question of whether these computer images, prepared in anticipa-

tion of litigation, are the sort contemplated by Rule 26(b)(3).

■ At the hearing counsel for defendant conceded that the records were not imaged in such form that, were they produced to plaintiffs, plaintiffs would be able to discern from them anything with respect to the defendant's legal strategy. Thus, the otherwise discoverable documents that have been imaged are kept in a format that does not contain or reveal any legal theories or mental impressions of defendant's attorneys. The basic premise underlying *Hickman* was that matters prepared in anticipation of litigation *and* which contain the mental impressions of an attorney are subject to discovery only upon a showing of substantial need and undue hardship. That raises the question, then, of whether a document or record clearly prepared in anticipation of litigation, as here, but which does not contain or reveal any mental impressions, thoughts or opinions of an attorney (or other representative) meets the definition of attorney work product. The court concludes that it does not.

Eleventh Circuit precedent states that:

The work-product privilege protects documents that reveal an attorney's mental impressions and legal theories *and* were prepared by the attorney in contemplation of litigation. See *Hickman v. Taylor,* 329 U.S. 495, 509–10, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947); Fed.R.Civ.P. 26(b)(3). The privilege applies not only to documents created after litigation has begun but also to documents created in anticipation of litigation. *See Delaney, Migdail & Young, Chartered v. IRS,* 826 F.2d 124, 127 (D.C.Cir.1987).

*Nadler v. U.S. Department of Justice,* 955 F.2d 1479, 1491–92 (11th Cir.1992) (emphasis added). The *Nadler* court held that an attorney's notes were protected from discovery only because they revealed mental impressions and thought processes of the attorney who created them. *See also, State of Florida v. Industrial Chemicals, Inc.,* 145 F.R.D. 585 (N.D.Fla.1991) (Vinson, J.)(holding that Civil Investigative Demand records generated by

state agency were not attorney work product even though created by counsel, because the "mental processes" of attorneys would not be divulged if records were produced).

■ Thus, the mere fact that a document or record was created by attorneys in anticipation of litigation does not make it work product unless it also reveals an attorney's mental impressions and legal theories. The Air Force concedes that its computer images do not contain mental impressions and legal theories, and their production would not give the plaintiffs insight into the defendant's strategy or opinions. Thus, the computer images in this case are not work product and are not entitled to protection from discovery under the reasoning of *Hickman.* Consequently, the provisions of Rule 26(b)(3) do not apply, and there is no need to determine whether plaintiffs meet the requirements of substantial need and undue hardship.[2]

*Cost of Production*

■ Defendant claims that she paid $250,-000 to her private contractor to create the computer images. She argues that if she is required to produce the computer images, plaintiffs should be required to pay their proportionate share of this cost. Plaintiffs say that they should not be required to reimburse the defendant for the cost of creating the computer images. Rather, they should be responsible only for the cost of reproducing the computer records on disk, obviously a nominal expense.

Defendants cite *Fauteck v. Montgomery Ward & Co.,* 91 F.R.D. 393 (N.D.Ill.1980), which required production of a computerized data base contingent on plaintiff's willingness to reimburse defendant for half the cost of creating it. The court held that it would be unfair for plaintiff to "piggy back" on the work done by defendant at great expense. Similarly in *Williams v. E.I. duPont deNemours & Co.,* 119 F.R.D. 648 (W.D.Ky.1987), the court required the EEOC to provide a computerized data base to an employer but

---

**2.** Were plaintiff's required to make such a showing, they would succeed on the authority of *In re Chrysler Motors Corp. Overnight Evaluation,* 860

F.2d 844 (8th Cir.1988) and *Washington Bancorporation v. Said,* 145 F.R.D. 274 (D.C.D.C.1992).

in turn required the employer to pay a fair portion of the cost.

Plaintiffs distinguish these cases as being contrary to Supreme Court precedent and to the provisions of Rule 26. In *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), the court held that the provision under Rule 26(c) authorizing district courts to issue orders protecting parties from "undue burden or expense" means that the court can require a party to pay the cost of complying with a discovery request. It is plaintiffs' position that defendant's cost in complying with this discovery request will be only that necessary to copy data onto computer disks. Plaintiffs maintain that the original cost of creating the computerized images was a unilateral, voluntary undertaking by the defendant and had nothing to do with discovery. Thus, complying with this request should not include the original creation of the computerized images.

Plaintiffs also argue that the courts' rulings in *Fauteck* and *duPont* were contrary to the plain provisions of Rule 26. Rule 26(b)(4)(C)(ii) provides that a party seeking discovery from an expert retained by the opposing party and who is not expected to be called as a witness can be required to pay the other party a fair portion of the fees and expenses incurred in obtaining facts and opinions from the expert. Plaintiffs reason that because Rule 26 does not contain any "fair portion" language in its general provisions on discovery, it can not be construed more broadly than to require, as plaintiffs urge, that a moving party pay only the cost of compliance with the discovery order.

Plaintiffs also distinguish *Fauteck* and *duPont* on their facts. The court in *Fauteck* specifically held that the requirement that the requesting party share the cost was based on Rule 26(b)(4)(C)(ii) which, as noted above, relates to expert opinions, something not present here. Moreover, *duPont* turned on the fact that the EEOC had obtained duPont's records (not its own as is the case here) and had computerized them. Having failed to do so itself, duPont then asked the court to allow it to obtain a copy of the EEOC's records. The court granted the request but required duPont to pay a "fair portion" of the cost, indicating that it was appropriate to pay for the EEOC's expert who encoded the data in formulating the data base.

The court agrees with plaintiffs. The "fair portion" language relied on in both *Fauteck* and *duPont* is not germane to the issues presented here. Rule 26(b)(4)(C)(ii) allows payment of a fair portion of the fees and expenses "reasonably incurred by the latter party in obtaining facts and opinions from the expert." Whatever may have been the case in *Fauteck* and *duPont*, the outside consultant who computerized defendant's records does not meet the definition of an expert retained in anticipation of litigation or preparation for trial and who is not expected to be recalled as a witness at trial, required for the triggering of the fair portion provision. At best, defendant's outside consultants were expert only in the sense that they converted a massive amount of paper documents into computer records. Even defendants do not argue that this made them "experts" within the meaning of the rule.

Finally, the court is of the opinion that cost shifting is not justified in this case in either event. The defendant is the United States of America, an entity with virtually unlimited assets. Plaintiffs are individuals who undisputedly are of modest means. Moreover, it is simply illogical to require plaintiffs to help defendant pay for something it did voluntarily. If defendant had kept its personnel records in the form of computer images in the ordinary course of its business, it certainly would not be entitled to claim reimbursement for that cost any more than any other party to litigation is entitled to reimbursement for what it does ordinarily. The fact that defendant waited until after this litigation started to computerize its records does not change the basic premise that it did so voluntarily, and certainly not in response to a discovery request. The intent and purpose of the Federal Rules of Civil Procedure is "to secure the just, speedy, and inexpensive determination of every action," is furthered by this result. Fed.R.Civ.P. 1.

For all of the foregoing reasons, it is ORDERED:

1. Plaintiffs' motion to compel discovery (doc. 156) is GRANTED.

2. Defendant shall within twenty (20) days provide to plaintiffs the requested computer files.

3. Plaintiffs shall be required to pay only the cost of copying the files to an acceptable computer storage medium.

4. This order should not be construed to require defendant to provide plaintiffs with a copy of the software it obtained to search the images, as that software was not specifically requested and that issue has not been briefed.