## In re BRISTOL–MYERS SQUIBB SECURITIES LITIGATION.

### CIVIL ACTION NO. 00–1990 (GEB).

United States District Court,
D. New Jersey.

Feb. 4, 2002.

Allyn Z. Lite, Lite, DePalma, Greenberg & Rival, Newark, NJ, James W. Johnson, Goodkind, Labaton, Rudoff & Sucharow, LLP, New York City, for Plaintiffs.

William J. O'Shaughnessy, McCarter & English, Newark, NJ, Evan R. Chesler, Richard J. Stark, Cravath, Swaine & Moore, New York City, for Defendants.

## MEMORANDUM OPINION

HUGHES, United States Magistrate Judge.

This matter comes before the Court on the Defendants' motion to require the Plaintiffs to pay for costs resulting from production of documents in response to discovery requests. Specifically, the Defendants seek (1) an order requiring reimbursement for the cost of reproducing paper documents responsive to the Plaintiffs' document request and (2) an order requiring the Plaintiffs to pay for one-half the cost of scanning the documents onto electronic form. The Plaintiffs originally opposed the motion on two grounds. First, the Plaintiffs argued that the Defendants "dumped" documents, thereby causing excessive reproduction costs. Second, the Plaintiffs argued that because the Defendants already possessed the information in electronic form, that is the form in which the discovery should have been produced. Their position has shifted somewhat to an argument that

they were "fraudulently induced" into an agreement to pay for photocopying. In addition, the Plaintiffs seek to have all the documents produced in electronic form for which they originally offered to pay a fair share of the cost, but now assert they should pay nothing, including the nominal cost of reproducing compact discs. The motion is considered pursuant to Fed. R. Civ. P. 78. For the following reasons, the Court will grant in part and deny in part the Defendants' motion for an order requiring the Plaintiffs to pay the agreed upon reimbursement for paper copying costs and will deny the Defendants' motion for a one-half contribution for scanning costs, but instead require payment only for the nominal cost of copying compact discs.

## I. BACKGROUND

The issues presented here raise the increasingly common problem of fair allocation of costs associated with discovery in the age of electronic information. The case arises from consolidated complaints in a putative class action asserting claims of false and misleading statements by corporate and individual Defendants concerning an anti-hypertension drug (*Omapatrilat*) to be marketed under the brand name *Vanlev*. The various claims allege violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b–5 at 17 C.F.R. § 240.10b 5, and negligent misrepresentation in violation of unspecified state law.

Prior to commencing document production, the Plaintiffs agreed to pay 10¢ per page for copying costs. The Plaintiffs allege that this agreement was based upon the Defendants' early estimate that the universe of responsive documents was approximately 500,000 pages. The Plaintiffs further claim that despite their request that they be advised of further estimates of the rolling number of responsive documents to be produced, the Defendants have currently "dumped" 3,085,-994 pages of documents (or sixfold the original estimate) in response to the Plaintiffs' document request, totaling $308,599.40 in copying charges. The Plaintiffs say that many of the documents produced were unresponsive to actual requests. The Defendants counter that the Plaintiffs' requests were couched with the proverbial "All documents ... but not limited to ..." language, and that they carefully selected and produced all responsive documents. The Plaintiffs also argue that since this number of documents vastly surpasses any similar document production in class action cases of this nature in which Plaintiffs' Counsel have appeared, the Defendants must have necessarily produced unresponsive or irrelevant documents. Finally, the Plaintiffs assert that the Defendants are guilty of "fraudulent[ly] induc[ing]" them to enter into the photocopying cost agreement because some of the requested information was already in electronic form. It is apparently uncontested that the Defendants possessed information relating to the New Drug Application (NDA) for *Omapatrilat* in electronic form *prior to* discovery requests by the Plaintiffs.

At some later point, it became apparent to the Plaintiffs that the Defendants had "scanned" the remaining documents for their own use in the course of trial preparation and, perhaps, trial. "Scanning" is the process of transforming paper copies (photos, documents, diagrams, charts, and graphs) into digital files.[1] It is also of some interest, if not import, to note that the Defendants copied the paper documents requested by the Plaintiffs at the time they were scanning the same documents by, in the vernacular, "blowing back" the documents; that is to say that at the same time documents were being scanned, or copied, onto a disc, paper copies were also being created. After the Plaintiffs became aware of the electronic scanning of the documents and requested copies of the compact discs containing the documents, the Defendants requested another $216,109.58, or one-half the cost of scanning the documents at 14¢ a page. In total, the Defendants are seeking $524,618.98 in reimbursement from the Plaintiffs for discovery costs.

The Defendants' position, and the reason they have moved for orders requiring full payment, is straightforward. The Plaintiffs

---

**1.** *See* Effective Use of Courtroom Technology: A Judge's Guide to Pretrial and Trial 330 (Federal Jud. Ctr. & National Inst. for Trial Advocacy eds., 2001).

knew that a case of this magnitude would result in the production of a substantial number of documents. The Plaintiffs agreed, unconditionally, to pay the market rate of 10¢ a page. The Plaintiffs requested documents and the Defendants produced documents responsive to the requests. Now is the time, the Defendants argue, to abide by the terms of the agreement and pay up. Furthermore, the Defendants point out that it was only after the bill for paper copying costs became due that the Plaintiffs inquired as to whether any of the material existed in electronic form. The Defendants responded that the information was indeed in electronic form and the Plaintiffs could share in that good fortune by paying one-half the cost of scanning, or $216,109.58. The Plaintiffs have declined to pay the remaining amounts due for paper copying costs and now refuse to pay not only the one-half contribution for scanning but also the nominal cost of reproduction of compact discs.

The parties originally brought this dispute to the attention of the Court by letter memoranda and conference call, which is the proper method, by local rule, order, and custom in this District, of seeking judicial intervention. *See* L. Civ. R. 16.1(f)(1); *see also* Case Management Order filed October 17, 2001. After considering the respective positions of the parties at that time, the Court decided that the issue merited formal notice of motion and full briefing as it involved the increasing use of information in digital form.[2] However, the Court did order the Defendants to produce copies of the compact discs at that time so as not to delay discovery pending final resolution of the cost allocation issue. Defendants now seek orders from the Court requiring the Plaintiffs to pay the full cost of paper reproduction, as agreed to by the parties, and an order requiring payment of one-half the cost of electronic reproduction.

## II. DISCUSSION

### A. PAPER DISCOVERY

The Plaintiffs do not dispute the per-page rate of 10¢[3] charged by the Defendants for photocopying and to which they freely agreed. However, they also point out, and the Court accepts based upon the submitted expert certifications, that the market rate for "blowing back" documents costs 8¢ a page. In addition, they argue that the Defendants, deliberately or otherwise, have "dumped" an extraordinary number of documents resulting in a prohibitive charge for reproduction. The Plaintiffs say that the Defendants have produced "boxes of documents" that are unresponsive to the Plaintiffs' specific document requests. However, the Defendants point out that many of these documents were specifically requested by Plaintiffs in paper form.

Somewhat troublesome to the Court is the fact that the Defendants apparently possessed the NDA in electronic form before producing the paper documents. However, the Defendants are correct in highlighting the fact that the Plaintiffs specifically requested paper documents in connection with the NDA, and did so apparently *after* the Court generally raised the issue of electronic information at the case management conference on October 10, 2001. The Court suggested that counsel might want to designate document custodians who could be deposed regarding electronic documents or other document retrieval issues. It is also important to note that the Defendants offered to permit the Plaintiffs to inspect the documents before blanket reproduction so that costs could be minimized. The Plaintiffs declined. Accordingly, it is apparent that the Plaintiffs had every opportunity to ask for electronic information but failed to do so until after the bill for paper discovery became due.

■ However, the Plaintiffs correctly point out that the FED. R. CIV. P. 26(a)(1)(B)

---

**2.** "According to a University of California study, 93% of all information generated during 1999 was generated in digital form, on computers. Only 7% of information originated in other media, such as paper." Kenneth J. Withers, *Electronic Discovery: The Challenges and Opportunities of Electronic Evidence,* Address at the National Workshop for Magistrate Judges (July 2001).

**3.** *See* A JUDGE's GUIDE, *supra* note 1 at 71 (providing that "copying documents costs between 7 cents and 10 cents per page").

advisory committee notes require parties to disclose "computerized data and other electronically-recorded information." Accordingly, the Defendants were mandated to advise the Plaintiffs that the NDA was in electronic form at the time 26(a)(1) disclosures were made. The Defendants did not disclose this fact and, accordingly, the Court will not require the Plaintiffs to pay for paper copies of the NDA, whether produced through " blowing back" or photocopying.

■ The Plaintiffs further argue that the Defendants, pursuant to Rule 26(a)(1), were also required to advise that they imaged, or scanned, all responsive documents. In support of this proposition, they cite to the same advisory committee notes as referenced above, i.e., must disclose "computerized data and other electronically-recorded information." *See id.* However, the Court finds that this requirement, by its plain language only goes to data *already* in electronic form at the time mandatory disclosure is to be made. The Court further holds that a party is not required to disclose to an adversary, absent an express request by the party or order of the court, any intention to prepare for trial by scanning documents into electronic form.

■ Alternatively, the Plaintiffs seem to argue that because they relied upon the Defendants' estimate that the universe of relevant documents would be approximately 500,-000 pages, they were entitled to stop the flow of responsive documents at the number which represented the amount of money they were willing to spend on discovery in this particular case. Although the prudent lawyer in cases of this scope is well advised to prepare a discovery budget before suit, that does not mean that the adversary should be required to turn off production like a water spigot when the other side says "enough." The Plaintiffs also say that they "instructed defendants that, if the remaining production were [sic] significant, it wanted to review the documents prior to copying and delivery." Pls.' Br. at 2. Lawyers don't "instruct" their adversaries, they "request" something or seek relief from the Court. Sophisticated class action plaintiffs' counsel, like those here, should appreciate that while there may

sometimes be revenue at the end of the case, there will *always* be significant expense at the beginning. The Plaintiffs cannot claim surprise when they received numerous documents in response to their expansive requests. However, the Plaintiffs go well beyond a claim of surprise and assert that, simply because they received substantially more documents than originally estimated, there was "fraudulent inducement" to enter into the agreement to pay for photocopying. Based upon a review of the submissions, the Court summarily rejects any such claim as unwarranted by the circumstances and as unworthy of professional adversaries.

■ Finally, there is no question that the Plaintiffs entered into an unconditional agreement to pay 10¢ per page. As the Court cannot find that the Defendants engaged in any "dumping," or otherwise provided unresponsive documents, the Plaintiffs shall now be required to pay an appropriate amount for that paper document reproduction, but not the full amount demanded by the Defendants. The Court, mindful of Rule 26(a)(1)(B), finds that where a party already possesses relevant information in electronic form, it is obligated, by way of mandatory disclosure, to so advise the adversary. Once advised of the existence of electronic data, a party may then make an informed decision as to the manner by which discovery could be produced. In addition, the Court, mindful of FED. R. CIV. P. 1, which requires that the Rules be administered to ensure "the just, speedy, and inexpensive determination of every action," finds that the Plaintiffs shall only be required to pay the cheaper "blow back" rate for paper production, i.e., 8¢ per page. Accordingly, the Plaintiffs will be required to pay the amount of $308,599.40 *less* (1) the cost of paper production of the NDA and (2) the 2¢ per page differential between the "blowing back" and photocopying of the remaining document production. Any further dispute relating to the calculation of this amount is to be brought to the Court's attention via conference call application.

## B. ELECTRONIC DISCOVERY

■ The Plaintiffs cite to a variety of cases supporting the proposition that elec-

tronic information is discoverable, a proposition which is not disputed and which misses the mark of the precise issue before the Court-fair allocation of costs. In discussing the allocation of costs during discovery, it is noted that FED. R. CIV. P. 26(c) "permits the Court to issue an order 'to protect a party or person from ... undue burden or expense,' including orders 'that the discovery ... may be had only on specified terms or conditions ... [or] only by a method of discovery other than that selected by the party seeking discovery.'" MANUAL FOR COMPLEX LITIGATION (THIRD) § 21.433 (1995). Courts have also recognized that with regard to electronically stored data, "the only restriction ... is that the producing party be protected against undue burden and expense and/or invasion of privileged matter." *Playboy Enter., Inc. v. Welles*, 60 F.Supp.2d 1050, 1053—1054 (S.D.Cal.1999); *see also Simon Prop. Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 640 (S.D.Ind.2000).

The Defendants principally rely on three cases to support their proposition that the Plaintiffs should be required to pay for up to one-half the cost of scanning the documents. In *Adams v. Dan River Mills, Inc.*, 54 F.R.D. 220, 222 (E.D.Va.1972), the plaintiff sought computerized employment records in a racial discrimination case and the defendant resisted by arguing an issue not involved here, that the material constituted trade secrets. The Court disagreed and ordered the material produced in electronic form while offering a protective order limiting further disclosure. *See id.* In *National Union Electric Corp. v. Matsushita Electric Industrial Co. Ltd.*, 494 F.Supp. 1257, 1262 (E.D.Pa.1980), then District Judge Becker required that the plaintiff produce a computer tape that could be "read" by the defendants' computer. Although Judge Becker acknowledged that there was no cost allocation issue because the defendants agreed to pay for preparing a new tape, the case is distinguishable here in that there is no men-

tion in that case of the identical material being produced in paper form. *See id.* Finally, in *Fauteck v. Montgomery Ward & Co.*, 91 F.R.D. 393 (N.D.Ill.1980), the Court found that (1) there was no prejudice to the defendant in this class action racial discrimination suit if required to produce a computerized data base and (2) it was not unfair to require production where the plaintiffs would be ordered to pay 50% of the defendant's costs. Again, unlike the present case, there is no indication that paper discovery was produced before the plaintiffs in *Fauteck* sought and agreed to pay for 50% of the defendant's costs. *Id.* at 399. The Court also notes that these three cases, though still constituting good law, occurred well before the blossoming of the electronic age.[4] It is beyond dispute that "[d]ocuments in digital format can be copied quickly, less expensively, and with better quality."[5] It is also unquestioned that if "there are a significant number of documents, and their content must be examined in order to conduct the case competently, the cost of doing whatever is going to be done with these documents will be cheaper in digital format than the manual alternatives."[6]

Here, the Plaintiffs had requested, once they were aware of it, that they be provided with the propounded discovery in electronic form. Defendants agreed, but wanted the Plaintiffs to pay one-half the cost of transforming paper documents to digital form, or $216,109.58. The Defendants, by using 14¢ per page to arrive at this bottom line figure, were well within the market rate range.[7] This rate is in contrast to the 10¢ charge per page for paper copying. The Defendants may say that "[l]awyers sometimes assert that it costs more to scan documents and deliver them in digital form than to copy the same documents and deliver them in paper copies."[8] However, "it is almost always not true if one considers more broadly the costs

---

4. *See* Withers, *supra* note 2.

5. A JUDGE'S GUIDE, *supra* note 1 at 67.

6. *Id.* at 70–71.

7. *See id.* at 71 (providing that "Scanning documents costs between 15 cents and 25 cents per page at commercial services.")

8. *Id.*

of storage, shipping, and use of documents in the trial preparation process."[9]

In connection with the fair allocation of costs associated with production of electronic information, the Plaintiffs chiefly rely upon *Hines v. Widnall,* 183 F.R.D. 596 (N.D.Fla. 1998), where the court compelled computer data without requiring contribution from the other party. The Defendants argue that this case is distinguishable on three grounds. First, the Defendant in *Hines* was the United States, "an entity with virtually unlimited assets." *Id.* at 601. Whether the United States or Bristol Myers Squibb has more discretionary money to spend on discovery is an intriguing issue but unnecessary to decide here because these Defendants could surely not claim substantial financial hardship if forced to pay. Indeed, these Defendants were willing to assume the full cost before Plaintiffs sought the information in electronic form. Second, the Defendants argue that the cost here is twice as much as in *Hines. Id.* at 600. Again, the Defendants had fully expected to assume the full cost of electronic transformation for their own purposes. The Court has also already found that the decision to transform information into electronic form for trial preparation is a party's own business and that decision is not required to be disclosed to an adversary absent an express request by the party or order of the Court. Third, the Defendants say that here the Plaintiffs have offered to pay a share of the cost of scanning, unlike in *Hines. Id.* at 600. An important distinction, however, is that the Plaintiffs here, while originally offering some contribution toward the costs of electronic production, also sought to be absolved of any responsibility for paper production costs. In addition, the Plaintiffs have now withdrawn their original offer and seek absolution for not only a one-half contribution, but also for the nominal cost of disc reproduction.

There is no question that the Defendants had intended, until the request for electronic information from the Plaintiffs arose, to fully fund the scanning process themselves for their own use in the litigation. It is further undisputed that the Defendants made the conscious choice of "blowing back" paper copies at the same time electronic copies were being made, without having first given the Plaintiffs the option of only paying for discovery once, for paper *or* for disc. Although the Defendants were not required to present such a choice to their adversaries, they cannot now, for lack of a better explanation, have [their] *cake and eat it too!*[10] On the other hand, the Defendants certainly did not contemplate a burst of largesse by paying the tab for even the nominal cost of disc reproduction for the Plaintiffs' benefit, nor can the Plaintiffs point to any authority for permitting such a minimal windfall. The Plaintiffs will only be required to pay the nominal costs of copying the compact discs containing the digital information and not one-half the cost of scanning as requested by the Defendants. Any other decision would result in the Plaintiffs paying for "double discovery," a clear violation of Rule 1, which, again, mandates that the rules be "construed and administered to secure the just, speedy, and inexpensive determination of every action."

For a more comprehensive analysis of cost allocation and cost shifting regarding production of electronic information in a different factual context, counsel are directed to the recent opinion in *Rowe Entertainment, Inc. v. William Morris Agency, Inc.,* No. 98 CIV. 8272 RPP JCF, 2002 WL 63190 (S.D.N.Y.Jan.16, 2002).

## C. RULE 26(f) CONFERENCE

The Court was sorely tempted to place some sort of affirmative burden upon the party creating information in electronic form, for trial preparation purposes, to so advise the adversary before responding to paper document requests. However, in dealing with issues of this nature, the Court believes in what ought to be a familiar maxim: lawyers try cases, not judges.

FED. R. CIV. P. 26(f) provides that before a Rule 16 Conference, the parties

---

9. *Id.*

10. *See* MIGUEL DE CERVANTES SAAVEDRA, *DON QUIXOTE,* PART II, CHAP. XLIII (1615).

"confer ... to develop a proposed discovery plan...." In the electronic age, this *meet and confer* should include a discussion on whether each side possesses information in electronic form, whether they intend to produce such material, whether each other's software is compatible, whether there exists any privilege issue requiring redaction, and how to allocate costs involved with each of the foregoing. L. CIV. R. 26(b)(2) addresses the requirements of FED. R. CIV. P. 26(f) and, in addition, requires parties to discuss any "special procedure." Moreover, the standard initial scheduling order in this District contains instructions on topics to be discussed in the preparation of a Joint Discovery Plan which include "(3) a description of all discovery problems encountered to date, the efforts undertaken by the parties to remedy these problems, and the parties' suggested resolution of problems; (4) a description of the parties' further discovery needs." *See, e.g.,* Scheduling Order filed October 17, 2001.

Although there may be room for clearer direction in existing rules [11] and orders [12] that explicitly address cost allocation in production of paper and electronic information, counsel should take advantage of the required Rule 26(f) meeting to discuss issues associated with electronic discovery. As the eve of electronic case filing (ECF) is upon us, in this and most other Districts, the production of electronic information should be at the forefront of any discussion of issues involving discovery and trial, including the fair and economical allocation of costs. Of course, in some instances, paper, rather than electronic, production may still be the preferable method of discovery.

### III. CONCLUSION

For the reasons stated, the Court will grant in part and deny in part the Defendants' motion for an order requiring full re-imbursement for paper copying costs. The Plaintiffs will pay the amount of $308,599.40 *less* (1) any amount associated with the paper production of information relating to the NDA and (2) the 2¢ per page differential between "blowing back" and photocopying. In addition, the Court will deny the Defendants' motion for an order requiring that the Plaintiffs pay one-half the cost of scanning documents onto electronic form. Instead, the Plaintiffs will be required to pay the nominal cost of duplicating compact discs.

It is essential to our system of justice that lawyers and litigants, above all, abide by their agreements and live up to their own expectations. Here, the Plaintiffs will abide by their agreement and pay the full amount of paper copying costs, less the particular costs that the Court has found to be inappropriate. Similarly, the Defendants will live up to their own expectation that they would assume the full cost of electronic transformation for trial preparation and pay the full cost of scanning the documents, with the Plaintiffs paying only the nominal cost associated with disc reproduction. For future reference, the Court notes that had the Defendants not produced paper discovery first, thereby requiring the Plaintiffs to incur considerable expense, a greater contribution for the cost of scanning might have been appropriate.

Finally, it is the Court's hope and expectation that the full and meaningful utilization of tools permitted by the Federal Rules of Civil and Criminal Procedure, particularly Rule 26(f) in civil cases, will obviate future problems of fair and economical discovery cost allocation in the production and use of electronic information. An appropriate Order accompanies this Memorandum Opinion.

### ORDER

This matter having come before the Court on motion of the Defendants for (1) an order

---

**11.** As indicated, the Court has found that FED. R. CIV. P. 26(a)(1)(B) requires a party to disclose "computerized data and other electronically recorded information" already in the possession of the party but not transformation of electronic date for trial preparation purposes. *See* FED. R. CIV. P. 26 advisory committee's notes; *See also Kleiner v. Burns,* 48 Fed. R. Serv.3d 644, 2000 WL 1909470 (D.Kan.2000).

**12.** Some Districts, like the Middle District of Florida, already have Local Rules governing exchange of discovery requests by disc. *See* A JUDGE's GUIDE, *supra* note 1 at 293 (citing U.S. Dist. Ct. Rules M.D. Fla., Rule 3.03(f)).

requiring the Plaintiffs to pay the full cost for paper document production, or $308,599.40 and (2) an order requiring the Plaintiffs to pay one-half the cost of scanning the documents into electronic form, or $216,109.58; and the Plaintiffs opposing the motion by seeking to be absolved of responsibility for any cost resulting from paper or electronic production; and the Court having reviewed the written submissions of the Parties; and the Court having considered the matter pursuant to FED. R. CIV. P 78; and for the reasons expressed in the accompanying Memorandum Opinion; and for good cause shown:

IT IS on this 4th day of February, 2002,

ORDERED that the Defendants' motion for reimbursement of costs associated with paper discovery is GRANTED in part and DENIED in part as follows: The Plaintiffs are required to pay the full cost of $308,599.40 *less* (1) any amount associated with paper production of information relating to the NDA and (2) the 2¢ price differential between "blowing back" and photocopying; and it is

FURTHER ORDERED that the Defendants' motion for reimbursement of one-half the cost of scanning documents is DENIED; and it is

FURTHER ORDERED that the Plaintiffs shall pay the nominal cost associated with reproduction of compact discs.